MEARS ET ALS., RESPONDENTS, *v.* JOHN JAMES ET AL.,
APPELLANTS.

It is error to render judgment against a party who is made defendant by amend-
ing a complaint without giving him an opportunity to answer.

Hearsay evidence cannot be reviewed to show that one is a partner in a partic-
ular firm.

Parties renting property to amalgamators crushing their ore and running it into
their amalgamating pans, at a fixed price per ton, do not thereby become part-
ners with the amalgamators.

A & B, being partners in any particular business, A is not bound to notify the
world nor any particular person that he is not a partner of B's in a new and
distinct business, into which B enters with other partners, and under a differ-
ent firm name.

APPEAL from the District Court of the Fourth Judicial District,
Hon. C. C. GOODWIN presiding.

The facts are stated in the Opinion.

*Wallace & Flack,* for Appellants.

*North & Harris,* for Respondents.

Opinion by BEATTY, J., BROSNAN, J., concurring.

In this case a suit was brought on a merchant's account, and
two promissory notes, against two of the defendants, John James
and James Hill, charging them to be members of and the parties
composing the firm of James & Co. One of the defendants, James
Hill, answered, denying all the allegations of the complaint so far
as he was concerned, the real defense being that he was not a
member of the firm of James & Co. After the trial had com-
menced, the plaintiffs asked and obtained leave of the Court to
amend their complaint by adding the names of W. H. James, Jas-
per O'Farrell, E. A. Mier and J. W. Farrington as defendants.
When this amendment was made, W. H. James, who was present
in Court, asked for time to be given him to answer the complaint
before the trial proceeded. This the Court refused. After the
plaintiffs had introduced their evidence, James Hill moved for a
nonsuit as to himself, which the Court refused. The trial then
proceeded, and judgment was had against all the defendants. The

defendants James Hill and W. H. James then moved for a new trial, which was refused.    The grounds of error assigned are numerous, and many of them well taken.    But it will be necessary to notice only a few of them.

In the first place, the nonsuit should have been granted as to James Hill, because the testimony of plaintiffs showed clearly that the firm of James & Co. consisted ostensibly of John James, E. A. Mier and J. W. Farrington.    Possibly one or more of the sons of John James may have participated in the profit and loss of that firm by secret arrangement with their father, and thereby became responsible for the debts of the firm.    But beyond all question, as shown by the plaintiffs' own testimony, James Hill had nothing to do with the profits or losses of that firm—was not a partner, and no act of his is shown whereby he became responsible for their debts. The only evidence introduced tending to show that Hill was a member of that firm was the testimony of one Bostwick, who says W. H. James told him Hill was a member of the firm of James & Co.    This testimony was mere hearsay as to Hill, and could not have been considered so far as he was affected.    W. H. James himself being a defendant, his declaration might have been received to affect him, but not to affect Hill.

The judgment is erroneous as to W. H. James, because he was not allowed the statutory time to put in his answer and make his defense.

The facts about this case are these : (and about those facts there seems to be no dispute whatever) John James and James Hill were the owners as tenants in common of a piece of real estate, on which was erected a quartz mill known as the Napa Quartz Mill. In January, 1862, they entered into a contract with Farrington & Mier, by which they leased to Farrington & Mier a piece of ground adjacent to the mill, and contracted to crush ore for Farrington & Mier, in their mill, run the crushed ore or pulp into the works of Farrington & Mier on the leased ground, and receive five dollars per ton for the crushing.    They were also to increase the power and capacity of the mill, and to put drums on their main shaft, and thereby furnish motive power to Farrington & Mier for their amalgamating works.

After this arrangement was made between Hill and John James

on one side and Farrington & Mier on the other, John James agreed to become a partner with Farrington & Mier in their reduction operations. From that time forward, the business of Hill and John James in crushing ore was carried on in the name of Hill & James; though some of their creditors had their names reversed and charged their accounts to James & Hill. The other business of amalgamating or reducing the crushed ore on the leased premises, was carried on in the name of James & Co.—the latter company consisting of John James, J. W. Farrington and E. A. Mier:

The learned Judge who tried this cause below seems to have thought that James Hill was responsible for the debts of James & Co., not because he was a member of that company or in any manner interested in their business, but because they had erected their improvements on land in which he was part owner, and because one of the partners in the firm of James & Co. was also a partner with Hill in the firm of Hill & Co., and Hill never gave notice that he was not interested in the firm of James & Co.

In the first place, Hill & James leased certain real estate and contracted to furnish certain motive power to Farrington & Mier for a stipulated price. This did not make them partners with Farrington & Mier. Nor is there any presumption of law that a landlord is the partner of his tenant. Landlords certainly need not notify the world that they are not partners of their tenants. Secondly, after the lease was executed by James & Hill to Farrington & Mier, James, without the knowledge of Hill, so far as the testimony shows, became a partner with Farrington & Mier. We are unable to see how that could affect Hill. As James' partner, he was responsible for all legitimate transactions done in the firm name. But James was not acting for the firm or in the firm name when he entered into the firm of James & Co. This was a new firm, formed for a business separate and distinct from that of Hill & James. Certainly, it was not the business of Hill to follow James around the world and notify everybody, if James formed a new partnership he would not be responsible for the debts of such firm.

We have said, perhaps, more than was necessary about this case; but the case of *Jones & Colla* v. *O'Farrel & Co.*, lately decided by this Court, involved the same questions as those involved in this

case. After that case was decided, the Court below persisted in sustaining in this case the same rulings made in that. We have endeavored to so state our views that no further errors can be made in cases arising out of these partnership transactions.

The judgment of the Court below is reversed, and a new trial ordered.

LEWIS, C. J., having been counsel in this case in the Court below, did not participate in the decision.